**PHELPS & JONES v. JACKSON, Adm'r.**

ADMINISTRATORS—*To set aside fraudulent contracts by, etc.*—A creditor seeking the aid of a Court of Chancery to reach an equitable interest in an estate, or to set aside a fraudulent contract made by an administrator, should aver and show, in his bill, that his demand or claim has been legally ascertained or reduced to judgment.

EQUITY PRACTICE—*Changed by Code.*—The rule that, if complainant has a plain and ample remedy at law, his bill must be dismissed, has been changed by the Code of Practice, in so far that, if his bill shows that he has a legal right, without motion before, and on motion after answer filed, if made within proper time, he may have the action transferred to the proper docket.

SAME.—On dismissal of bill for want of equity, where it appears that complainant has legal rights, the better practice is, to dismiss without prejudice and not peremptorily.

APPEAL FROM DREW CIRCUIT COURT.

HON. HENRY B. MORSE, *Circuit Judge.*

*Wells & McKain* and *Bell & Carlton*, for Appellants.

As to the question of jurisdiction, we submit that the Circuit Court has concurrent jurisdiction with the Probate Court in claims of this kind. *See chap.* 4, *Gould's Digest*; 5 *Ark.*, 472; *Ryan vs. Leman*, 7 *Ark.*, 84, and *Saunders vs. Rudd, admr.*, 21 *Ark.*, 519. Under our Code, there is no such thing as dismissing a bill for want of equity. *See secs.* 3, 18, 338, 606. If the proceedings should have been at law instead of equity, the error would not cause the abatement or dismissal of the suit. *See Code, sec.* 5 *et seq.*; *Lonsdale vs. Mitchell*, 14 *B. Monroe*, 349; *Trustees of Lebanon vs Forest*, 15 *B. Monroe*, 171; *Robertson vs. West*, 14 *B. Monroe*, 5; *Frazer vs. Naylor*, 1 *Met.*, 596; *Foster vs. Watson*, 16 *B. Monroe*, 71.

*J. W. Van Gilder* and *J. A. Jackson*, for Appellees.

The plaintiffs cannot come into a court of equity to set aside a sale for fraud, unless they first show that they have a judgment at law, and have an execution issued and returned

" *nulla bona.*"    *See* 11 *Ark.*, 411, 718 ; 12 *Ark.*, 387 ; 18 *Ark.*, 589.    There is certainly no equity in the bill.

BENNETT, J.—The appellants, Phelps & Jones, filed in the Drew Circuit Court their complaint in equity against the administrator and heirs of W. E. Conly, Sr., deceased.    Afterward, on the 4th day of October, 1870, the appellants filed an amended complaint.    On the 4th day of April, 1870, Jackson, as administrator, filed his answer to the original complaint, with a demurrer clause added, and, on the 11th of April, 1871, filed answer and demurrer to amended complaint.

The heirs, though served with notice, did not appear. April 11th, 1871, an interlocutory decree was taken against some of the defendants.    On the 15th of April, 1872, the cause was heard on the original and amended complaints, exhibits, answers of the administrator and guardian *ad litem* for minor defendants, demurrer and proofs, and a decree was rendered dismissing the complaint.    From which decree an appeal was granted.

Was the complaint properly dismissed?    The complaint stated that plaintiffs were partners, on the 20th day of January, 1862, and doing business as commission merchants, in New Orleans, and that W. E. Conly, Sr., on that day was indebted to them in the sum of $4270 28, of which sum $1082 98 was evidenced by a note; the balance was on account.

W. E. Conly, Sr., died on the 1st day of September, 1865. At the time of his death, he held a vendor's lien on certain lands, as described in the complaint.    On the 11th day of October, 1866, one of the defendants, W. E. Conly, Jr., as foreign administrator, obtained a decree in chancery to foreclose this equitable lien.    The land was sold, in pursuance of this decree, to W. E. Conly, Jr., for the benefit of the heirs of W. E. Conly, Sr.    No part of the purchase money was paid, except the amount sufficient to pay costs of foreclosure. The complaint alleges that W. E. Conly, Jr., and the heirs of

W. E. Conly, Sr., were in collusion to defraud the plaintiffs, by the purchase of said lands, and not accounting for the same. The heirs of W. E. Conly, Sr., are in possession of the land.

On the 11th of July, 1869, the defendant, James A. Jackson, was duly appointed administrator. On the 18th day of August, 1869, the note and account, duly authenticated, were presented to the administrator, but he refused to allow them as claims against the estate of W. E. Conly, Sr. It is further alleged, that the accounts of the plaintiffs with the estate of Conly, deceased, are so complicated that they cannot have proper relief in a court of law, and that the personal assets of the estate are not worth $25. The complaint then prays that the defendant, Jackson, as administrator, be required to state what amount of personal assets belong to said estate, and that their claim be allowed and classed as a demand against the estate, and that the administrator pay the amount out of the assets, and, in default of which, that the lands mentioned be subjected to the payment. The note and accounts are made exhibits.

In the amended complaint, certain judgments obtained in Texas are set out, and the complaint states that these judgments were obtained against W. E. Conly, Jr., as administrator of W. E. Conly, Sr., and that they are unsatisfied, and that there is no other property out of which they can satisfy them except the lands as described in the original complaint. It as also alleged that W. E. Conly, Sr.'s estate is insolvent.

The answers of the defendants, Jackson, administrator, and of the guardian *ad litem*, deny none of the allegations of the bill; nor does the proof introduced. The records do not disclose the fact whether the court below dismissed the bill upon its merits, or whether it was dismissed for want of equity. The answers and proof not helping the defendants, we must presume the judgment of the court was based upon the demurrer. Therefore, we shall consider the case as though no answer or proofs were introduced, and decide the issues of law as on demurrer.

The answer of Jackson sets out three causes of demurrer: *First*, as to the sufficiency of the complaint; *Second*, as to the jurisdiction; and, *Third*, a special cause, which is more properly included in the first.

Taking these parts of the demurrer in their more appropriate order, we will discuss the question of jurisdiction first.

In the collection of claims against the estates of deceased persons, litigants may proceed by actions as laid down in the statutes. By *chap.* 4, *secs.* 101, 102, *Gould's Digest,* the manner of exhibiting claims against the estates of deceased persons is prescribed. One of the modes thus prescribed is laid down in *sec.* 101, *chap.* 11, which says: "All actions commenced against any executor or administrator, after the death of the testator or intestate, shall be considered demands legally exhibited against such estate, from the time of serving the original process on the executor or administrator, and shall be classed accordingly."

In claims of the kind, as presented in the complaint, the Circuit Court has concurrent jurisdiction with the Probate Court. *Pullam et al. vs. Yell, Governor,* 5 *Ark.,* 472; *Ryan vs. Lemon,* 7 *Ark.,* 84; *Saunders vs. Rudd, adm'r.,* 21 *Ark.,* 519; *Hornor, as Trustee, vs. Hanks,* 22 *Ark.,* 587.

This leads us to consider that part of the demurrer which states that the complaint does not allege facts sufficient to constitute a cause of action.

The complaint sets out that W. E. Conly, Sr., was indebted to the plaintiffs in an amount named; that it was never paid, and the defendant, Jackson, is his administrator, and that the claim was properly authenticated and duly presented. The suit is founded, in part, on bills of exchange, and the dates show that they are not barred by the statute of limitations. These facts, if true, would entitle the plaintiffs to judgment in a suit at law; but do these facts constitute a cause of action in chancery?

The plaintiffs' claim to the equitable interposition of the equity side of the court rests, 1st: Upon the ground that they

are creditors of the estate of W. E. Conly, Sr., deceased, and that W. E. Conly, Jr., the foreign administrator, confederated with the heirs of W. E. Conly, Sr., and fraudulently secured the title and possession of certain lands, in violation of the rights of plaintiffs, and that, aside from these lands, there are no known assets out of which their claim can be paid. They also seek to make the administrator discover what personal assets may be in his hands, and desire judgment for the amount of their claim, and, in default of payment by the administrator, that the lands mentioned be subjected to the payment of it.

Whatever may be the effect of fraud upon a contract, as between parties themselves, in consideration of their infamy, or public policy, there can be no question but that creditors and others, whose rights are affected thereby, may cause such fraudulent contract to be set aside, and their rights, so affected, may be protected and preserved: Justice Walker, in the case of *Meux vs. Anthony, et al.,* 11 *Ark.,* 418, says: "The right to this equitable interposition is based upon three grounds: *First,* that the party complaining has such rights. *Second,* that they are affected by such fraudulent contract. *Third,* that the contract is, in fact, fraudulent. And first, in regard to the rights to be affected. They must be definite, ascertained rights, by the ordinary tribunals appointed for that purpose. Thus, it has been held that it is not sufficient for a creditor, when he comes into a court of equity, to have a fraudulent sale set aside and the property subjected to the payment of his debt, that he should simply show an outstanding debt liquidated or unliquidated, but he must also show that he has prosecuted such claim to judgment, so that it may be judicially ascertained that he has a certain specific amount due him; nor is that sufficient; he must show that process has been regularly issued thereon, and returned *nulla bona,* for, until this is done, it is not ascertained that his rights are necessarily affected by such transfer. Or, if the complainant would avoid the force of this rule, he should show

such equitable circumstances as will relieve him from its application, making his case an exception to the rule." It has been expressly decided by this court, that a judgment, in the Circuit Court, obtained against an administrator or executor, does not confer authority upon the plaintiff to collect the judgment in the ordinary mode, by the process of the court. The judgment, though it has settled the existence of a demand, has completed its allowance, and has imposed upon the administrator the duty to classify it. *Adamson et al. vs. Cummins, ad.*, 5 *Eng.*, 548.

Therefore, it may not require a person, seeking in equity to set aside a fraudulent contract, made by the administrator with the heirs of an estate, to aver in his bill that process has been regularly issued and returned *nulla bona;* but we can see no reason why he should not have obtained a judgment on his claims. The reason and propriety of this is obvious. It is altogether premature, on his part, to ask the Chancellor to set a contract aside until this is done. Until his claim is so adjudicated, even admitting the transfer of property, or the use of the assets to have been fraudulent, he has no right to complain of wrong done him. He may never obtain a judgment upon his claim. He may not be a creditor of the estate. The note and account may have been paid—the judgment satisfied. The refusal of the administrator to allow them must have been based upon some legal reason for their rejection. Therefore, it is necessary that at least the legal rights of the parties should have been ascertained before a bill of complaint in equity can be maintained to reach an equitable interest or set aside a fraudulent transaction of the debtor.

The second ground of equitable jurisdiction in this case is alleged to be, that the suit embraces a mutual and complicated account.

Provided the rule is that equity has jurisdiction to settle mutual and complicated accounts, the facts in this case would not warrant equitable interference for that reason. This cause of action is founded upon a note, judgments and ac-

counts. The note is a plain promissory note. The judgments, as set forth in the amended bill, were obtained in the State of Texas, in a court of competent jurisdiction, and duly authenticated, and the account is a plain, straightforward statement of debits and credits; such as is usually made and rendered in daily mercantile transactions. Nothing appears in either to make their solution, in any sense, a matter that a legal tribunal could not justly solve. No equity, then, appears in the bill. The plaintiffs, however, insist that, providing there is no equity disclosed in the bill, it should not have been dismissed, if it showed a cause of action at law, but have been transferred to the law side of the court.

It is an old and familiar rule of chancery practice that, if the complainant has a plain and ample remedy in a court of law, his bill cannot be entertained, but must be dismissed for the want of equity. The Code, however, has changed this practice, and allows a plaintiff, who has committed an error as to the kind of proceedings adopted, to change them and transfer the action to the proper docket; but this change and transfer must be done by the plaintiff. If the error is discovered before answer is filed, it may be done without motion; if afterward, on motion, in court. The transcript in this case does not show that the plaintiffs, in the court below, made any effort to have the proceedings changed. It is within the province of the court to make the transfer, but it is not bound to exercise this discretion, unless asked to do so by the party desiring it. When the bill has been examined, and judgment pronounced of "no equity in it," unless the party complaining makes some effort to have the proceedings changed to the proper forum, it is the duty of the Chancellor to dismiss the bill.

The complainants, in the case at bar, may be entitled to a judgment at law upon their notes, etc.; in such instances it is not best to make a peremptory order of dismissal, but to dismiss the bill without prejudice.

To this extent, the decree of the Chancellor is erroneous,

and should be modified to read, "and complainants' bill be dismissed without prejudice." In all other respects, the proceedings and findings of the court below are affirmed.